UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANCIS ARRIGO, et al,  )
    Plaintiffs,  )
                   )
    v.  )   C.A. No. 10-11650-MLW
                   )
SCHOLARSHIP STORAGE, INC., d/b/a  )
BUSINESS AS USUAL and CONTRACTOR  )
MANAGEMENT SERVICES LLC,  )
    Defendants.  )

MEMORANDUM AND ORDER

WOLF, D.J.                                            August 10, 2011

I.   INTRODUCTION

On August 9, 2010, on his own behalf and on behalf of others similarly situated, plaintiff Francis Arrigo ("Arrigo") filed a complaint in Middlesex Superior Court against defendants Scholarship Storage, Inc. ("Scholarship Storage") and Contractor Management Services LLC ("CMS").[1] The complaint alleges that defendants unlawfully misclassified delivery drivers as independent contractors in violation of Massachusetts General Laws Chapter 149 §148B. The complaint's five counts raise solely state law claims.

On September 28, 2010, defendants timely filed a notice of removal pursuant to 28 U.S.C. §§1441 and 1446, stating that this court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

---

[1] The complaint improperly named Contractor Management Services as a defendant. The proper defendant is Contractor Management Services LLC. See Notice of Removal at 1 n.1.

On October 8, 2010, Arrigo timely filed a motion to remand (the "Motion"), pursuant to 28 U.S.C. §1447(c), arguing that the court lacks subject matter jurisdiction over this case. Arrigo contends that the amount in controversy requirement of §1332(a) has not been satisfied because, in calculating the amount in controversy, the court cannot aggregate damages for the entire putative class but must take into account only damages allegedly due to the named plaintiff, which Arrigo argues have not been shown to a reasonable probability to exceed $75,000. Defendants oppose the Motion on the grounds that Arrigo has, in fact, individually alleged claims that would, if successful, likely result in more than $75,000 in damages and attorneys' fees.

For the reasons described below, the Motion is being allowed.

## II. LEGAL STANDARDS

### A. Removal Pursuant to Diversity Jurisdiction and Remand

When a plaintiff files suit in state court and asserts exclusively state law claims, a defendant may remove the case to the appropriate district court if the case is one in which the district court could have exercised original jurisdiction, meaning that the case contains an amount in controversy greater than $75,000 and pits citizens of different states against one another. See 28 U.S.C. §1332(a), (a)(1) (diversity jurisdiction); 28 U.S.C. §1441(a) (removability); 28 U.S.C. §1446 (procedure for removal).

However, a plaintiff may respond to a notice of removal by

2

filing a motion to remand the case to state court if, among other reasons, the plaintiff believes that the district court lacks subject matter jurisdiction. See 28 U.S.C. §1447(c). Indeed, even if no such motion is filed, the court has "an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate [and, therefore, is] obliged to address the propriety of removal." Am. Policyholders Ins. Co. v. Nyacol Prods., Inc., 989 F.2d 1256, 1258 (1st Cir. 1993) (considering whether removal was proper, despite fact that parties agreed the federal courts had subject matter jurisdiction). On this point, 28 U.S.C. §1447(c) states that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The First Circuit has made clear that "[t]his command is obligatory . . . ." Hudson Savings Bank v. Austin, 479 F.3d 102, 108-09 (1st Cir. 2007).

B.   The Burden of Establishing Federal Diversity Jurisdiction

"Under our dual sovereign system, the plaintiff is the 'master to decide what law he will rely upon.'" Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (quoting Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)). In light of that fundamental premise, when a plaintiff files a complaint in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper. See

Valentin v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001); Danca, 185 F.3d at 4; MB Auto Care Mgmt., Inc. v. Plaza Carolina Mall, L.P., 695 F. Supp. 2d 1, 2 (D.P.R. 2010) ("[I]n case of removal, the removing party bears the burden of showing that no plaintiff is a citizen of the same state as any of the defendants, and that the matter in controversy exceeds $75,000, excluding interests and costs."). This includes "the burden to show that the amount in controversy meets the jurisdictional threshold." Ciardi v. F. Hoffman-La Roche, Ltd., C.A. No. 99-11936-GAO, 2000 WL 159320, at *1 (D. Mass. Feb. 7, 2000).

"Subject matter jurisdiction is not a 'nicety of legal metaphysics' but rests instead on 'the central principle of a free society that courts have finite bounds of authority.' Courts must be careful to respect these limits on their authority." Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 101 (1st Cir. 2001) (internal citations omitted). When federal subject matter jurisdiction is doubtful, those doubts should be resolved in favor of remand. See Padilla-Gonzalez v. Local 1575, 635 F. Supp. 2d 105, 108 (D.P.R. 2009) (citing Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)); In re Mass. Diet Drug Litig., 338 F. Supp. 2d 198, 202 (D. Mass. 2004) (citing Boyer, 913 F.2d at 111).

In this case, the parties agree that the complete diversity requirement of §1332(a)(1) has been met, and the court concurs. Arrigo is a Massachusetts citizen. See State Court Compl. at 2.

4

Defendant Scholarship Storage is a Delaware corporation with its principal place of business in New York. See Notice of Removal at 2. Defendant CMS is a Nevada LLC with its principal place of business in Arizona. See id. The sole issue is whether more than $75,000 is in controversy in this case, as required by §1332(a).

The analytical process for determining whether a party seeking removal has established that the amount in controversy requirement is met depends on whether the plaintiff has, in good faith, pled an amount in controversy above or below the jurisdictional threshold. See, e.g., Karofsky v. Abbott Labs., 921 F. Supp. 18, 20 n.3 (D. Me. 1996) (explaining three distinct postures). In this case, Arrigo's complaint does not specify the amount in controversy. It states only that Arrigo seeks relief including:

> Restitution for all wages and overtime payments that are due to Plaintiffs and other class members because of their misclassification as independent contractors; Restitution for all other benefits of employment due to the Plaintiff and class members to which they are entitled as employees, such as unemployment compensation, workers' compensation, payment for the employer's share of taxes, and reimbursement for expenses the Plaintiffs' employers would have paid had they properly classified them as employees; Statutory trebling of all wage-related damages; [and] Attorneys' fees and costs.

State Court Compl. at 7.

"The First Circuit has not yet articulated the defendant's burden of proving the amount in controversy where the plaintiff has not claimed a specific amount of damages in the pleadings." Nollett v. Palmer, C.A. No. 02-265-JD, 2002 WL 1674379, at *2 (D.N.H. July

5

18, 2002). As a whole, "[t]he federal courts are split on which standard to use to determine whether a case can be removed if no [precise] amount in controversy was pleaded at the state court level, but all seem to agree that the burden of proof remains with the defendant." 14AA Charles A. Wright, et al., Federal Practice & Procedure §3702 (3d ed. 2009).

The majority approach favors a preponderance of the evidence standard. "When the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001); see, e.g., Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009) (stating that this standard applies "whether the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum") (internal quotation marks and citation omitted); In re 1994 Exxon Chemical Fire, 558 F.3d 378, 387 (5th Cir. 2009); Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007); Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 404-05 (6th Cir. 2007); Miedema v. Maytag Corp., 450 F.3d 1322, 1330 (11th Cir. 2006); Gilman v. BHC Sec., Inc., 104 F.3d 1418, 1421 (2d Cir. 1997); cf. Bartnikowski v. NVR, Inc., 307 F. App'x 730, 734 & n.7 (4th Cir. 2009) (applying preponderance of the evidence standard with the agreement of the parties, without explicitly adopting it as law of the circuit, but noting that

several circuits have explicitly adopted this approach "where plaintiffs leave damages unspecified"). But see Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004) (requiring the "defendant to show to a legal certainty that the amount in controversy exceeds the statutory minimum").

While not explicitly adopted by the First Circuit, the majority approach has been used by several courts under its auspices. See, e.g., Lowe v. Sears Holding Corp., 545 F. Supp. 2d 195, 196 (D.N.H. 2008) ("Where, as here, the complaint does not put any number on the plaintiff's claimed damages, this court requires the removing defendant to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."); Doughty v. Hyster New England, Inc., 344 F. Supp. 2d 217, 219 (D. Me. 2004) (remanding case because defendant failed to "establish[] by a preponderance of the evidence that the amount in controversy exceeds $75,000"); Karofsky, 921 F. Supp. at 20 ("The burden is on the defendants, as the removing parties . . . to show that it is more likely than not that [plaintiff's] recovery [would] exceed the jurisdictional amount."); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 65 (D.R.I. 2002) (same). But see In re M3Power Razor Sys. Mktg. Practices Litig., C.A. No. 05-111777-DPW, 2007 WL 128846, at *4 (D. Mass. Jan. 11, 2007) (denying plaintiff's motion to remand because the court could "not fairly find to a legal certainty that the amount in controversy is $75,000 or

7

less"); Harvard Real Estate-Allston, Inc. v. KMART Corp., 407 F. Supp. 2d 317, 321 (D. Mass. 2005) (explaining remand was appropriate because "it is apparent to a legal certainty that the amount in controversy does not meet the requisite threshold").

Notably, the First Circuit employs a similar "preponderance of the evidence" framework in analogous circumstances. For example, if a defendant seeks removal pursuant to alleged diversity jurisdiction, and the plaintiff challenges the defendant's assertion that the parties are not domiciled in the same state, "the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004) (emphasis added). Even more closely analogous are cases in which a defendant seeks removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d), 1453. In such cases, "the removing defendant must show a reasonable probability that the amount in controversy exceeds $5 million." Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 43 (1st Cir. 2009) (emphasis added). "[T]he reasonable probability standard is . . . for all practical purposes identical to the preponderance standard adopted by several circuits." Id. at 50. However, the First Circuit concluded that "[t]he 'reasonable probability' language better captures the preliminary nature of this inquiry, reserving the preponderance of the evidence terminology for other conclusions." Id. At least one other court in the First Circuit has

recognized that Amoche's holding provides support for adopting the preponderance standard for determining the amount in controversy question in non-CAFA cases, as well. See JGCA Holding Corp. v. McCarthy, C.A. No. 09-cv-358-JD, 2010 WL 99089, at *1 (D.N.H. Jan. 6, 2010) (recognizing that Amoche's holding comports with the majority approach and applying that standard in a non-CAFA case).

In this case, the court is employing the majority approach, in light of the fact that it comports with analogous First Circuit law and because the weight of authority within this Circuit and across the nation supports it. Accordingly, Arrigo's Motion must be allowed unless the court concludes that defendants have proven by a preponderance of the evidence that the amount in controversy exceeds $75,000.

C. Calculating the Amount in Controversy

In calculating the amount in controversy, a federal court must examine relevant state law in determining the nature and extent of the damages which may be awarded. See Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir. 2004); Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220-21 (D.N.H. 2004). For example, "[w]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." Evans, 326 F. Supp. 2d at 222 (citing cases). In addition, a court must take into account attorneys' fees when the award of those fees is statutorily authorized. See Spielman v.

Genzyme Corp., 251 F.3d 1, 6 (1st Cir. 2001).

However, the First Circuit has explained that the named plaintiff in a class action may not aggregate the attorneys' fees of the entire class in order to satisfy the jurisdictional amount requirement when a state statute authorizes the awarding of fees to a successful litigant. See id. at 8; Radlo v. Rhone-Poulenc, S.A., 241 F. Supp. 2d 61, 64 (D. Mass. 2002) (citing Spielman for the rule that "attorney's fees in a class action may not be aggregated and attributed only to the named plaintiff but rather must be prorated across the entire class"). This is in keeping with the "traditional judicial interpretation . . . that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." Snyder v. Harris, 394 U.S. 332, 335 (1969). More than forty years ago, the Supreme Court applied this rule to class action plaintiffs. See id. The rule has not changed since then. See, e.g., Gattegno v. Sprint Corp., 297 F. Supp. 2d 372, 377 (D. Mass. 2003) ("As a general rule, the amount-in-controversy for a federal diversity jurisdiction may not be met by aggregating the claims of the members of a class."). Thus, "at least one named plaintiff in a class action suit must meet the amount-in-controversy requirement." Radlo, 241 F. Supp. 2d at 65 (citing Gibson v. Chrysler Corp., 261 F.3d 927, 940 (9th Cir. 2001)).

III. ANALYSIS

The complaint alleges that Arrigo began working as a delivery driver for defendants in August, 2009. See Compl. at 2. Arrigo allegedly was required to report to work each day at least 45 minutes prior to the time he could begin making deliveries. See id. On occasion, he allegedly was required to work more than 40 hours per week without receiving overtime pay. See id. at 3-4. In addition, Arrigo allegedly was required to pay defendants $30 per week as an administrative fee, was not reimbursed for the cost of using his personal vehicle for making deliveries, and was not compensated for time spent traveling back to defendants' office at the end of each workday. See id. at 4. As indicated earlier, if Arrigo prevails in this action, he is entitled to treble damages "for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." Mass. Gen. Laws. ch. 149 §150.

By defendants' calculations, after trebling, Arrigo's damage claims, up to October 22, 2010, total approximately $61,890.[2] See

---

[2] Defendants' calculations are based on the following estimates: "$7.50 per day of pre-delivery work, $2.50 per day for the return drive to the Wakefield facility, $7.50 per day for post-delivery work, $2.50 per day for waiting time, $1.50 for overtime (based on $30.00 of monthly overtime prorated, assuming 20 days of performing services per month), $5.60 per day for fuel, $20.00 per day for mileage, $5.77 per day for automobile insurance, $6.00 daily in administrative fees, and $10.00 of health insurance premium costs per day (based on $200 per month prorated, assuming 20 days of performing services per month)." Opp'n to Mot. to Remand at 11. Defendants estimate that Arrigo

11

Opp'n to Mot. to Remand at 11. That is, they fall short of the $75,000 jurisdictional threshold by approximately $13,000. Defendants attempt to make up the difference by pointing to Arrigo's statutory ability to recover attorneys' fees under Massachusetts General Laws Chapter 149 §150, and by arguing that, because Arrigo remains employed by defendants, his alleged damages continue to accrue at a rate of approximately $68.87 per day. See id. at 12-14.[3] Neither strategy is effective here.

As noted above, while Arrigo will be able to recover attorneys' fees if successful, he cannot aggregate the attorneys' fees of the entire putative class for the purpose of satisfying the amount in controversy requirement. See Spielman, 251 F.3d at 8. Similarly, defendants cannot aggregate those fees for him. Attorneys' fees must be prorated across the entire class, and defendants have not shown by a preponderance of the evidence that

---

worked approximately 300 days. See id., Ex. 2 at 1-2 (Aff. of Michael Williams).

[3] Defendants also argue that their "compliance costs," which they value at approximately $15,000, should be factored into the court's calculation. See Opp'n to Mot. to Remand at 15. Arrigo has not responded to this argument, but it is not meritorious. It is true that, where injunctive relief is sought, the amount in controversy is determined by the "value of the object of the litigation," which sometimes means "the judgment's pecuniary consequences to those involved in the litigation." Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004). Here, however, defendants offer no explanation as to how Arrigo's damages differ from the cost to them of complying with a decision in Arrigo's favor. Indeed, in this case, counting both Arrigo's damages and defendants' "compliance costs" towards the amount in controversy would entail significant double counting.

Arrigo's share will be greater than $13,000. Indeed, defendants estimate that, if a class is ultimately certified in this case, "the attorneys fees' that likely would be requested would . . . range between at least $6,320.00 and $7,900.00 per class member." Opp'n to Mot. to Remand at 14.[4] Assuming, without finding, that defendants' estimates are correct, Arrigo's treble damages and attorneys' fees would only total between $68,000 and $70,000. That still would not satisfy the requirement of 28 U.S.C. §1332(a).

Defendants also are incorrect in asserting that any damages accruing between removal and trial should be counted towards the amount in controversy in this case.

In a removal case, the amount in controversy is determined by looking to the circumstances existing at the time of removal. See Magerer v. John Sexton & Co., 912 F.2d 525, 529 (1st Cir. 1990). If it is clear at the time of removal that the judgment will create an obligation to pay monies not yet due to the plaintiff, those monies can be counted towards the amount in controversy. See Lowe, 545 F. Supp. 2d at 196 (citing 14B Charles A. Wright et al., Federal Practice & Procedure §3702 (3d ed. 1998)). For example, in wrongful termination cases, the First Circuit has included in the amount in controversy "what the plaintiff would have earned but for the

---

[4] Defendants arrive at these figures by using as a benchmark the $316,000 in attorneys' fees sought by Arrigo's attorneys in an unrelated 2008 case. See Opp'n to Mot. to Remand at 12. Defendants assume a class of 40 to 50 class members. See id. at 14.

13

termination of his employment, even if those sums had not yet become due at the time of removal." Id. (citing Hardemon v. City of Bos., 144 F.3d 24, 26-27 (1st Cir. 1998)).

However, if it is not clear at the time of removal that the judgment will create an obligation to pay monies not yet due to the plaintiff, those monies cannot be counted towards the amount in controversy, even if they later actually become due. For example, in cases involving installment contracts, "[t]he prevailing view is that only the amount of the installments unpaid at the commencement of the suit may be taken into account, even though the judgment will be determinative of the company's liability for future installments." 14AA Charles A. Wright et al., Federal Practice & Procedure §3710 (3d ed. 2009); see also Dardovitch v. Haltzman, 190 F.3d 125, 135 (3d Cir. 1999) ("Where a plaintiff brings a suit for payment of money as part of an ongoing and continually accruing obligation, such as an installment contract, the amount in controversy is generally limited to the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments."). This is because, as a practical matter, defendants in such cases could decide at any point to begin paying future installments and, thereby, limit their potential liability and the amount in controversy. See Button v. Mut. Life Ins. Co. of N.Y., 48 F. Supp. 168, 171 (D. Ky. 1943).

In the instant case, as in installment contract cases, it was

14

not clear at the time of removal that any post-removal damages would accrue. Defendants could have decided at any time after removal to reclassify Arrigo as an employee. Had defendants done so before mid-November, 2010, Arrigo's damages (including attorneys' fees) would have been capped at less than $75,000.[5] That defendants apparently did not reclassify Arrigo before mid-November, 2010, does not mean that it was clear <u>at the time of removal</u> that they would not do so. At the time of removal, then, any continuing damages Arrigo might suffer were speculative and, accordingly, cannot now be counted towards satisfying the amount in controversy requirement in this case. This is consistent with the rule that it is only "unconditional future payments [that] may be included when computing the amount in controversy." <u>Williams v. Aetna Cas. & Sur. Ins. Co.</u>, 487 F. Supp. 44, 45 (D. Md. 1980) (citing <u>Aetna Cas. & Sur. Co. v. Flowers</u>, 330 U.S. 464, 467-68 (1947)).

Accordingly, even accepting defendants' calculations as correct and counting Arrigo's pro-rated share of any attorneys' fees, defendants have not proven by a preponderance of the evidence

---

[5] This case was removed on September 28, 2010. The court is assuming, along with defendants, that Arrigo's treble damages through October 22, 2010, total approximately $61,890. <u>See</u> Opp'n to Mot. to Remand at 11. The court is also assuming, again along with defendants, pro-rated attorneys' fees of approximately $6,320 to $7,900, <u>see</u> <u>id.</u> at 14, meaning that, as of October 22, 2010, the amount in controversy in this case was between $68,210 and $69,790. If, as defendants contend, Arrigo's damages have continued to accrue since removal at a rate of $68.87 per day, <u>see</u> <u>id.</u> at 11, with trebling, his damages exceeded $75,000 sometime in mid-November.

that the amount in controversy in this case exceeds $75,000.[6] Although there appears to be <u>nearly</u> $75,000 in controversy, the court must abide by the rule that "any doubts about the propriety of removal should be construed against the party seeking removal." <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 509 F. Supp. 2d 82, 89 (D. Mass. 2007).

Finally, if, as defendants claim, Arrigo is forum shopping and, upon remand, intends to amend his complaint to name other plaintiffs whose damages allegedly exceed the requisite amount in controversy, it is his right to do so. A federal court cannot exercise jurisdiction based on its predictions as to a plaintiff's likely course of action. If Arrigo amends his complaint upon remand, defendants may then attempt to remove the case again. Where "subsequent pleadings, conduct by the parties, or various other circumstances bring a case that previously was not removable within the jurisdiction of the federal courts, a timely second notice of removal is permissible and may succeed." 14C Charles A. Wright, et al., <u>Federal Practice & Procedure</u> §3739 (4th ed. 2009); <u>see also</u> <u>Amoche</u>, 556 F.3d at 53. If, within the next two years, defendants

---

[6] Arrigo also disputes defendants' calculation of his regular pay rate. Defendants calculate Arrigo's damages based on a rate of $10 per hour. Arrigo argues that this rate is incorrect and, presumably, inflated but does not suggest what the proper rate should be. The court need not address this issue because it concludes that, even using the $10 per hour rate proposed by defendants, they have failed to show by a preponderance of the evidence that at least $75,000 is in controversy.

properly remove this case, it will return to this court and this judge as a civil case "related to one previously filed in this court." See Rule 40.1(G) of the Local Rules of the United States District Court for the District of Massachusetts.

IV. ORDER

In view of the foregoing, the court concludes that defendants have not shown by a preponderance of the evidence that the amount in controversy in this case is greater than $75,000. Accordingly, it is hereby ORDERED that Arrigo's Motion for Remand (Docket No. 4) is ALLOWED and this case is REMANDED to the Middlesex Superior Court.

_____
UNITED STATES DISTRICT JUDGE